**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEBOARH STACEY CLYNE,<br><br>                    Plaintiff,<br><br>          -against-<br><br>BANK OF AMERICA, N.A. and SHIRLYN FRANCIS,<br><br><br>                    Defendants. | Docket No.: 1:21-cv-04509-BMC<br><br><br><br>**FIRST AMENDED COMPLAINT  AND JURY TRIAL DEMAND** |

Plaintiff Deborah Stacey Clyne, by her attorneys, SHEGERIAN & ASSOCIATES, alleges, for her Complaint against Defendants Bank of America, N.A. and Shirlyn Francis, upon information and belief, and at all times relevant, as follows:

**PRELIMINARY STATEMENT**

1.        Bank of America Vice President Shirlyn Francis ("Francis") intentionally discriminated against Plaintiff Deborah Stacey Clyne ("Clyne") based on her religion as a practicing Jehovah's Witness after Clyne requested that she not be scheduled to work more than one Saturday per month in order to evangelize as required by her faith. Defendant Bank of America, N.A.  ("BOA") permitted this discrimination despite complaints from Clyne and in violation of its own Reasonable Accommodation Policy. Further, Defendants retaliated and permitted retaliation against Clyne based on her request for accommodation and opposition to discrimination. Ultimately, Clyne was forced to resign in order to abide by the dictates of her faith and conscience in the face of Defendants' repeated failures to accommodate, international  discrimination, retaliation and harassment.

1

## NATURE OF THE ACTION

2.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e to 2000e-17 ("Title VII"); the New York State Human Rights Law, N.Y. Exec. § 296, *et seq*. ("NYHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq*. ("NYCHRL"), to remedy discrimination based upon religion, disparate treatment, a hostile work environment, failure to promote, retaliation, aiding and abetting and other adverse action perpetrated by Defendants. Plaintiff seeks monetary damages to remedy her employment claims against Defendants.

3.      Plaintiff, a Jehovah's Witness, complains that Defendants unlawfully discriminated against her on the basis of her religious beliefs by treating her less favorably in her terms and conditions of employment, denying her reasonable accommodation, retaliating against her for complaining to Employee Relations and upper management about the denial of reasonable accommodation, denying her a promotion for which she was qualified and implying that she would never be promoted if she stayed under Francis' supervision.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). This Court has supplemental jurisdiction over Plaintiff's New York State and New York City's statutory causes of action prohibiting discrimination pursuant to 28 U.S.C. § 1367(a).

5.      Plaintiff asserts supplemental State and City law claims pursuant to the New York State Constitution, New York Executive Law § 296, *et seq*. and New York City Administrative Code § 8-101, *et seq*.

6.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and application and enforcement of BOA's equal employment opportunity ("EEO") policies, affecting the hiring, promotion, work assignments, discipline and termination of its employees, may be found in this District.

7.     All conditions precedent to jurisdiction have occurred or been complied with including, and in particular:

a.   In April 2021, Plaintiff filed a Charge of Discrimination ("the Charge dated April 20, 2021") based on religion with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the adverse actions of which Clyne complains in this action.

b.   A Dismissal and Notice of Rights was issued by the EEOC on July 6, 2021. Plaintiff duly filed her Complaint within 90 days of receipt of the Dismissal and Notice of Rights. See attached as **Exhibit A**, a copy of the Charge dated April 20, 2021 and Dismissal and Notice of Rights dated July 6, 2021.

## **PARTIES**

8.     Plaintiff is a Jehovah's Witness and citizen of the United States of America who, at all times relevant, resides in Kings County, State of New York.

9.     Plaintiff has been continuously employed by BOA as a Client Service Representative at the 515 Ocean Avenue, Brooklyn, New York 11226 branch from on or about January 21, 2020 until February 12, 2021.

10.     Upon information and belief, Bank of America, N.A. (also known as Bank of America, National Association) is a public corporation duly organized and existing under and by virtue of the laws of the State of Delaware where it is incorporated with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28202.

11.     Upon information and belief, at all relevant times, BOA is an employer as that term is used in Title VII, the NYHRL § 296, *et seq.,* and NYCHRL § 8-101, *et seq.*

12.     Upon information and belief, at all relevant times, BOA is an employer as that term is used under the NYCHRL, because it has four (4) or more employees in its employ and conducts business in the State and City of New York.

13.     Upon information and belief, Defendant Francis was at all relevant times Plaintiff's direct supervisor as Vice President, Financial Center Manager of the Bank of America branch located at 515 Ocean Avenue in Brooklyn, New York 11226.

14.     Upon information and belief, Francis, as a manager of a bank branch employed by BOA, in her individual and official capacity, acted as an agent, employee, licensee, servant and manager for BOA.

15.     Upon information and belief, BOA owned, managed, controlled, maintained, employed and/or supervised Francis, individually and in her official capacity as a Vice President, Financial Center Manager.

## STATEMENT OF FACTS

## I.     PLAINTIFF'S FAITH, EMPLOYMENT HISTORY AND DEFENDANTS' DISCRIMINATORY PRACTICES

16.     Plaintiff was baptized as a Jehovah's Witness in 2009. In 2011, Plaintiff began pioneering as a Jehovah's Witness, and in 2012, she attended the Pioneer Service School for one (1) year at which only exemplary members of a congregation qualify to attend in order to become a "Pioneer." Pioneers devote themselves to preaching and evangelizing, "endur[ing] hardship, [to] do the work of an evangelizer and fully accomplish their ministry," as cited in religious scripture - 2 Timothy 4:5. They believe that these special schools allow them to "draw closer to Jehovah,

become more effective in all aspects of the ministry, and continue on in faithful service." In 2017, Plaintiff was invited back to attend Pioneer Service School for another year.

17.     As a Pioneer, Plaintiff was required to evangelize during the times individuals were most likely to be home: Saturday.

18.     On January 21, 2020, Clyne became employed by BOA. Clyne was hired for the part-time position of Client Service Representative ("CSR") responsible for handling cash transactions, referrals of customers to bankers and servicing of ATM machines.

19.     On or about December 18, 2019 during Clyne's initial interview for the CSR position with BOA employee, Steven Shnitman ("Shnitman"), a Branch Manager, but not for the Church and Ocean branch, Plaintiff notified Shnitman that she was a practicing Jehovah's Witness who was unable to work Saturdays and required an accommodation if she were to be hired.

20.     After Plaintiff was interviewed by Schnitman, BOA policy required that three managers approve the accommodation of only working one Saturday per month before Clyne could be offered the CSR position.

21.     On information and belief, at the time of Plaintiff's hiring, Shirlyn Francis, a Vice President, Financial Center Manager for BOA, was the Branch Manager of the Church and Ocean branch. On information and belief, as the Branch Manager, Francis was aware of Clyne's request for religious accommodation to not be scheduled to work on Saturdays.

22.     After the interview, Shnitman telephoned Clyne stating, in substance, "If you are able to work at least one Saturday a month, we can give you the accommodation." Plaintiff responded, in substance, "Ok, I'll make that work."

23.     On information and belief, Francis was aware that Plaintiff had been granted a religious accommodation of not being scheduled to work more than one Saturday per month.

24.     Plaintiff's employment at BOA began on January 21, 2020, Plaintiff's direct supervisor was Francis, and she was initially only scheduled to work one (1) Saturday per month.

25.     In March 2020, the COVID-19 Pandemic resulted in Governor Andrew M. Cuomo issuing Executive Order No. 202 declaring a State of Disaster Emergency in New York effectively shutting down New York City.[1]

26.     In or about March 2020, BOA employees employed at the 515 Ocean Avenue branch were failing ill or were unable to physically work at the branch location and therefore worked remotely from home. On a few occasions, Clyne was the only cash capable Associate employed at the branch prior to the branch eventually receiving assistance from Joshua Yelverton, Relationship Banker and Mariam Konate, CSR. Clyne was the only CSR to never call out during her employment with BOA.

27.     From on or about January 21, 2020, Assistant Manager, Cordero Spencer ("Spencer") was responsible for composing the schedule for Clyne at the 515 Ocean Avenue branch, including other BOA employees employed at the branch. Spencer was aware of Plaintiff's need for religious accommodation during the time period he composed Clyne's weekly schedules.

28.     In or about March or April 2020, Francis began composing Clyne's weekly schedules.

29.     Aware of Plaintiff's reasonable accommodation granted by BOA's Employee Relations and offered by Shnitman prior to Clyne beginning employment, Francis began scheduling Clyne to work three (3) Saturdays per month.

30.     Due to the COVID-19 Pandemic and resulting low staffing issues at the branch, Plaintiff did not initially complain when Francis scheduled her to work three (3) Saturdays per

---

[1]     https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york

month. Plaintiff was never consulted by Defendants regarding the increase in working on Saturdays.

31.    In or about April 2020, Francis asked Clyne about the reason for her accommodation. Clyne explained that she engaged in full ministry as a Jehovah's Witness and needed to minster on Saturdays.

32.    In or about June 2020, Plaintiff applied for a Relationship Banker position as there were three (3) openings for that position at the branch. Doyin Olakojo ("Olakojo"), Assistant Manager of the 515 Ocean Avenue branch encouraged Clyne to apply for the position and aim for promotion. Olakojo expressed to Plaintiff he had no doubt she would be "great for the job."

33.    As a CRS, Plaintiff was already performing many of the duties required of a Relationship Banker, including being a "cash capable Associate" qualified to handle cash transactions with customers at a teller window.

34.    In response to Plaintiff's application to be a Relationship Banker ("RB"), Francis stated in substance to Plaintiff, "I am disappointed that you applied for the Banker's position." Francis warned Plaintiff that rather than apply for a promotion at Francis' branch, Plaintiff would be better off looking for employment at another branch entirely. Plaintiff responded in substance, "I am perfect for the job, I am doing it already."

35.    Francis did not interview Plaintiff for the RB position. Instead, Francis hired three candidates from outside of BOA to fill the open RB positions.

36.    Subsequently, Noy Nakkar ("Nakkar"), Consumer Banking Market Leader and Francis's supervisor, visited the branch, Plaintiff met with him in person. Nakkar informed Plaintiff that if she worked 36 hours per week, she could be promoted to RB but left the final decision at Francis's discretion. Prior to Plaintiff speaking with Nakker, Francis informed him

Plaintiff could not work full time. Both Nakkar and Francis were aware that Plaintiff was caring for her ailing mother and was unable to work full time.

37.     Sometime after Plaintiff met with Nakkar, Francis told Clyne that if she committed to working at least four Saturdays per month and work a minimum of 36 hours per week, she would consider Plaintiff for the promotion to RB. Plaintiff responded that she already consistently works 30 to 36 hours per week. Francis then responded, "I need Saturdays."

38.     After Nakkar informed Clyne working 36 hours per week was a sufficient amount to qualify her for the RB position, a requirement Plaintiff consistently met and could meet while only working one Saturday per month, Francis began telling Clyne she needed to work four Saturdays per month for the promotion.

39.     After denying Plaintiff the opportunity to interview for any of the three available RB positions at the 515 Ocean Avenue branch and hiring three outside candidates, Francis stated to Plaintiff in substance "See, I made sure that everyone I hired was able to work on Saturdays." Plaintiff, in disbelief, did not respond.

40.     Despite Francis' statement to Plaintiff,  Corine Etienne, an RB, and Anya Auguste, a CSR, were both given permission to only work two Saturdays per month.

41.     Upon hiring the three new employees in the RB role, Francis directed Clyne to train two out of the three RBs hired by Francis. The third RB was trained at another location but upon beginning her employment as an RB at the 515 Ocean Avenue branch often required additional assistance from Clyne to perform her duties.

42.      Prior to the COVID-19 Pandemic, BOA employed four CSRs, including Plaintiff, and two RBs at the 515 Ocean Avenue branch. During the initial months of the 2020 Pandemic, the number of CSRs decreased to two (2) and only one RB working at the branch. By May and

June of 2020, the BOA 515 Ocean Avenue branch employed approximately five (5) to six (6) cash capable Associates (either CSRs or RBs) whose branches had closed but remained employed by BOA. On a given Saturday, only three (3) teller windows with a cash capable associate were utilized; four (4) windows would be used on a busy day.

43.     In or about June 2020, Plaintiff notified Olakojo, Assistant Manager and confided in some of her colleagues, Brittany Blount and Arkenson Neckles, of Defendants' treatment of her based upon her religion and request for reasonable accommodation explaining how Francis consistently ignored her reasonable accommodation on a weekly basis by scheduling her to work more than two Saturdays and pressuring her to work four Saturdays each month if she wanted to be considered for a promotion to RB.

44.     In or about June 2020, Plaintiff noticed the branch had sufficient staff and requested to meet with Francis to decrease the number of Saturdays she was scheduled to work each month and reiterated her desire to be promoted to an RB position.

45.     In or about June 2020, Plaintiff requested permission from Francis to return to working only one Saturday a month as was offered when she began working in January 2020. Plaintiff stated in substance, "Can I go back to the original accommodations since we have more people working with us?" Francis responded in substance, "No, I don't understand why you were hired with special accommodations . . . I would never have hired with special accommodations."

46.     Plaintiff responded in substance, "Well, I am already hired, can we work something else out in the meantime like maybe work only two Saturdays per month." Francis responded, "I'll think about it."

47.     A second time in June 2020, Plaintiff raised the issue of the RB promotion to Francis, and Francis responded that Clyne had to work all Saturdays per month to be given the promotion.

48.     On information and belief, in or about June 2020, as a member of BOA management, Francis received an internal email from the bank notifying her that her branch's CSR employees would all be converted to RB positions and therefore promoted to receive additional benefits in their new roles. Francis did not inform Clyne of this information.

49.     In or about September 2020, Plaintiff informed BOA's Employee Relations Consultant employed in the bank's HR department, Michele Caruso ("Caruso") that Plaintiff had been hired with an accommodation to only work one Saturday per month, but her supervisor, Francis was ignoring her accommodation, denying she had any knowledge of it at the time Clyne was hired, had been scheduling her to work three Saturdays per month since in or about March or April of 2020 and refusing to move her back to one Saturday per month.

50.     Clyne further detailed to Caruso that, after the branch had hired three new staff members, she had asked Francis to decrease the number of Saturdays she was scheduled to work to one Saturday per month. Plaintiff further stated she was willing to compromise and work two Saturdays per month maintain her employment with Defendants if necessary. Plaintiff informed Caruso that Francis previously denied her request along with Clyne's suggested accommodation.

51.     Plaintiff further informed Caruso that she believed Francis was intentionally withholding the promotion to the RB position from Plaintiff based upon her inability for religious reasons to work four Saturdays per month, which was not a requirement of the RB job description and would force Plaintiff to completely forgo her religious obligations on Saturdays. Plaintiff told

Caruso that Francis informed her that because Plaintiff could not work on Saturdays, she could not have the RB job.

52.     In or about September 2020, Plaintiff informed Caruso that an RB at the 515 Ocean Avenue branch was consistently scheduled to work only two Saturdays per month and sometimes only required to work one.

53.     On information and belief, after receiving Plaintiff's complaints, Caruso contacted Nakkar and Francis to discuss Plaintiff's accommodation.

54.     Caruso telephoned Plaintiff to notify her she was temporarily approved to work two Saturdays per month but that her request of one Saturday per month could not be granted as it would cause undue hardship to BOA.

55.     Caruso did not explain to Plaintiff how fully granting the requested accommodation would cause undue hardship.

56.     Caruso notified Plaintiff HR would reevaluate at the end of the year in December 2020 whether Plaintiff could return to working one Saturday per month.

57.     During the discussion concerning Plaintiff's accommodation request to work Saturdays, Francis represented to Caruso that the branch would only have one or two CSRs working the line if Plaintiff's accommodation request was granted, which Plaintiff knew was not the case given the cash capable Associates being scheduled to worked at the branch at that time.

58.     On or about September 25, 2020, Caruso partially approved Plaintiff's request for accommodation, limiting her schedule to no more than two Saturdays per month to start October 2020. Caruso told Plaintiff she would add a reminder in her calendar for a meeting to take place in December 2020 between Plaintiff and Nakkar or Francis to reevaluate Plaintiff's accommodation request to work one Saturday per month.

59.     Caruso formalized the partial accommodation in a Religious Accommodation Final Determination Letter dated September 25, 2020.

60.     Despite BOA's HR department partially granting Plaintiff's accommodation request and limiting her scheduling to two Saturdays per month, Francis disregarded the accommodation and scheduled Plaintiff to work three Saturdays per month. The December 2020 meeting to reevaluate returning Plaintiff to a schedule with only one Saturday per month was never held.

61.     Shortly after Plaintiff's complaint to HR and request for the accommodation, from in or around September 2020 through January 2021, Jesus Mizsqueri ("Mizsqueri"), a Relationship Manager (Banker) at the 515 Ocean Avenue branch began harassing Plaintiff.

62.     Francis had recently hired Mizsqueri for the Relationship Manager role. Mizsqueri and Francis had previously worked together at Capital One bank and were friends.

63.     During the Pandemic, BOA provided lunch to its employees. Starting after Plaintiff's complaint to HR, when Mizsqueri would order lunch for a group of branch employees, he would purposefully forget to order Plaintiff lunch, incorrectly order her lunch or even take her lunch.

64.     Mizsqueri also undermined Plaintiff's authority and responsibility when she was assigned to vault duties. For example, if Plaintiff was signed into the bank's online vault system as a custodian, Mizsqueri would inexplicably sign her out or have another employee sign Plaintiff out of the system. When Plaintiff was the assigned custodian responsible for counting cash at the end of her shift and certifying the result, a duty that required her to count cash with Mizsqueri in the vault, Mizsqueri would request another employee count in the vault with him and not Plaintiff, even though Plaintiff was required to personally certify that the count was accurate.

12

65.     In or about December 2020, Plaintiff informed Olakojo of the hostile treatment she was receiving from Mizsqueri and requested a meeting to discuss this with Olakojo, Francis and Mizsqueri.

66.     In or around January 2021, the above-referenced meeting was held. Plaintiff addressed Mizueri's inappropriate behavior towards her. Olakojo agreed that the behavior was inappropriate and stated that Mizsqueri should have followed the employee module.

67.     Francis defended Mizqueri's actions and stated in substance that he was only "trying to be helpful" despite acknowledging that he had not correctly followed banking procedures. Francis turned to Plaintiff and stated that Plaintiff's "perception was off."

68.     As of January 2021, Francis had become openly hostile toward Plaintiff: she vocally supported Mizsqueri's disregard for bank policy and harassment of Plaintiff, continued to schedule Plaintiff to work three Saturdays per month despite Plaintiff's approved partial accommodation, prevented her from being promoted and further provided Plaintiff with an inaccurate and negative Year-End Performance Review, which would prevent her from transferring to another BOA branch.

69.     During one instance when Plaintiff requested an override from Francis on behalf of a customer, Francis made Plaintiff (and the customer) wait 45 minutes. Another branch employee, Jovanda Fereirra ("Fereirra") could not believe Francis would compromise customer service to that extent to retaliate against Plaintiff. While Clyne tried to service this one customer waiting on Defendant, Fereirra had tended to seven (7) other customers. This type of wait time affects customer feedback that Plaintiff receives.

70.     In January 2021, Plaintiff was scheduled to work and worked four (4) Saturdays.

71.     In January 2021, Francis completed a formal 2020 Year-End Performance Review of Plaintiff. Francis's "Overall Manager Evaluation" rated Plaintiff with "Meets/Meets" and commented:

> "There is opportunity for Deborah to work on customer first impression, in several cases in 2020 myself or FCAM had to intervene when Deborah was having an argument or misunderstanding with a customer. I would like to see Deborah use her knowledge and skills to deescalate situations and I would like to see her work towards meeting the needs and expectations of the diverse range of customer types; adapt to peoples unique needs…In addition, I would like to see her work on consistency with first impression and by consistently using active listening skills and leading every conversation with empathy."

72.     Francis recorded in Clyne's review that during her year-end meeting Clyne "committed to working on: [] improving her product knowledge so she can better help customers . . . refer more consistently to the RM's . . . [and] ensuring she delivers on Customer Experience, with FC OSTAT and Associate OSAT 90% or higher."

73.     On January 26, 2021, Plaintiff met with Francis at Francis's request.

74.     During the meeting, Plaintiff notified Francis that she was resigning from her position.

75.     Working for BOA under Francis had become intolerable for Plaintiff: she was experiencing intense anxiety, felt physically ill and struggled with constant feelings of guilt and shame at failing to meet her religious duty to minister and evangelize on Saturdays.

76.     At the meeting, after Clyne notified Francis of her resignation, Francis stated she was obligated to inform Clyne of a "merit raise" approved by BOA effective February 12, 2021.

77.     Francis refused to tell Plaintiff the amount of the raise.

78.     On February 12, 2021, Plaintiff sent a polite and professional farewell email to her colleagues along with the bank's management employed at the 515 Ocean Avenue branch location. See attached as **Exhibit B**, Email from Plaintiff dated February 12, 2021.

14

## II.     PLAINTIFF'S FORMAL EEOC CHARGE OF DISCRIMINATION

79.     On April 20, 2021, Plaintiff filed a Charge of Discrimination with the EEOC to

complain to Investigator of the EEOC – New York District Office, Loresa Lockett regarding

unfair discriminatory treatment and retaliation she received during her employment with

Defendants. *See* **Exhibit A**.

80.     On June 16, 2021, Investigator Lockett emailed Plaintiff requesting the witness

contact information for RB, Corine Etienne and CSR, Anya Auguste be provided by June 21, 2021

to further the EEOC's investigation. The same day Clyne provided Investigator Lockett with Ms.

Etienne and Ms. Auguste's contact information via email.

81.      Plaintiff received a Dismissal and Notice of Rights dated July 6, 2021 along with

a Dismissal Letter from Investigator Lockett dated July 7, 2021. The Dismissal and Notice of

Rights stated the EEOC was closing its file on Plaintiff's Charge because the EEOC determined

"it will not proceed further with its investigation, and makes no determination about whether

further investigation would establish violations of the statute. This does not mean the claims have

no merit. This determination does not certify that the respondent is in compliance with the

statutes." *See* **Exhibit A**.

## FIRST CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*., and its
Amendments for Religious Discrimination,
Disparate Treatment and Failure to Provide Reasonable
Accommodation — Against Defendant Bank of America, N.A.**

82.     Plaintiff hereby repeats and re-alleges each allegation contained in the

paragraphs above as if fully set forth herein.

83.     Defendant discriminated against Plaintiff on the basis of her religion in violation of

Title VII. Defendant engaged and allowed its employees, managers, and agents to engage in a

course of conduct which included without limitation: consistently scheduling Plaintiff to work on Saturdays despite her previously approved request for accommodation, denying requests for reasonable accommodation, failing to implement approved scheduling accommodations, harassing and ridiculing Plaintiff and denying Plaintiff a promotion because of her need for and request for accommodation. Such conduct is demonstrative of Defendant's reckless indifference to the laws prohibiting discrimination.

84.     Defendant's willful acts and omissions constitute unlawful discrimination against Plaintiff based on her religion in violation of Title VII.

85.     But for Plaintiff's religion as a Jehovah's Witness, Plaintiff would not have been harassed, treated unfairly, disciplining, denied promotion, retaliated against and constructively discharged.

86.     As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

87.     As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SECOND CAUSE OF ACTION

**Violation Of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*., and its Amendments for Hostile Work Environment on the Basis of Religion — Against Defendant Bank of American, N.A.**

88.     Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

89.    Defendant's persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a Jehovah's Witness who religiously worshipped on Saturdays.

90.    Defendant subjected Plaintiff to a hostile work environment permeated with harassment based on religion sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of Title VII.

91.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

92.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

### THIRD CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*., and its Amendments for Retaliation — Against Defendant Bank of America, N.A.**

93.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

94.    Plaintiff engaged in protected activities when she made multiple complaints of discrimination to BOA's management *i.e.* Doyin Olakojo, Assistant Manager and colleagues, Brittany Blount and Arkenson Neckles in June 2020 as well as to Employee Relations, Michele Caruso in September 2020 against Defendants.

95.    As a result of and in response to these complaints and Plaintiff's opposition to discrimination and failure to accommodate Francis denied Plaintiff a promotion, ridiculed and harassed Plaintiff, and told Plaintiff, in substance, that she would never receive a promotion while working at Francis' branch.

96.     By the acts and practices described above, Francis retaliated against Plaintiff for engaging in protected activities in violation of Title VII.

97.     Francis further allowed an employee under her management, Jesus Mizsqueri, to harass, bully, and retaliate against Plaintiff for engaging in protected activities in violation of Title VII and failed to take reasonable actions to address such behavior even after Plaintiff brought it to Francis's attention.

98.     As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

99.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## <u>FOURTH CAUSE OF ACTION</u>

**Violation of the New York State Human Rights Law for Religious Discrimination and Failure to Accommodate — Against All Defendants**

100.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

101.    New York Execute Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer . . . because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

102.    By the aforementioned acts, Plaintiff has been discriminated against by Defendants, on the basis of her religion in violation of the New York State Human Rights Law ("NYSHRL").

103.    But for Plaintiff's religion, she would not have been discriminated against, harassed, disciplined, retaliated against, denied promotion to RB and constructively discharged. Any reasons proffered by Defendants for unfairly treating Plaintiff by refusing reasonable accommodation and failing to promote her are a pretext for discriminating against Plaintiff based on her religion.

104.    Defendants' acts and omissions constitute unlawful and willful discrimination against Plaintiff based on her religion in violation of the NYSHRL.

105.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

106.    As a direct and proximate result of Defendants' unlawful termination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## FIFTH CAUSE OF ACTION

**Violation of the New York City Human Rights Law for Religious Discrimination and Failure to Accommodate — Against All Defendants**

107.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

108.    The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

109.    By the aforementioned acts, Defendants discriminated against Plaintiff, by creating and maintaining discriminatory working conditions, refusing requests for reasonable accommodation, and otherwise discriminating against Plaintiff because of her religion.

110.    But for Plaintiff's religion, she would not have been discriminated against, harassed, disciplined, retaliated against, denied promotion to RB and constructively discharged.

111.    Defendants' acts and omissions constitute unlawful and willful discrimination against Plaintiff based on her religion in violation of the NYCHRL.

112.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

113.    As a direct and proximate result of Defendants' unlawful termination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SIXTH CAUSE OF ACTION

### Violation of New York State Human Rights Law for Hostile Work Environment on the Basis of Religion — Against All Defendants

114.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

115.    Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a Jehovah's Witness.

116.    Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on religion sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of NYHRL.

117.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

20

118.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SEVENTH CAUSE OF ACTION

### Violation Of New York City Human Rights Law For Hostile Work Environment on the Basis of Religion — Against All Defendants

119.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

120.    Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a Jehovah's Witness.

121.    Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on religion sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of NYCHRL.

122.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

123.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## EIGHTH CAUSE OF ACTION

### Violation of New York State Human Rights Law For Retaliation — Against All Defendants

124.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

125.   New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any such activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practice forbidden under this article."

126.   Plaintiff engaged in protected activities when making multiple complaints of discrimination against Defendants to her supervisor, Defendant Francis, management and Defendant BOA's HR department, specifically Caruso.

127.   Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: consistently scheduling her to work on Saturdays despite being originally hired with the accommodation she would not be required to work more than one (1) Saturday per month, being denied reasonable accommodation by her direct supervisor, Francis after being approved to not work on more than two (2) Saturdays per month by Employee Relations, Caruso in September 2020 due to staffing issues during the COVID-19 Pandemic, disciplined and ridiculed by Francis for being unable to work every Saturday each month due to her religious observances, being denied a promotion and retaliated against for complaining to HR and upper management on more than one (1) occasion about consistently being scheduled to work on Saturdays, one of her days of religious worship and having taken adverse actions against her by denying her promotion to the RB position she was well qualified for and requested by her supervisor to transfer her employment to another branch. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

128.   By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

129.    By the above-described unlawful conduct, the individually named Defendant Francis, in her individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

130.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

131.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## NINTH CAUSE OF ACTION

**Violation Of New York City Human Rights Law For Retaliation — Against All Defendants**

132.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

133.    New York City Administrative Code §8-107(7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has opposed any practice forbidden under this chapter."

134.    Plaintiff engaged in protected activities when making multiple complaints of discrimination against Defendants to her supervisor, Defendant Francis, management and Defendant BOA's HR department, specifically Caruso.

135.    Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: consistently scheduling her to work on Saturdays despite being originally hired with the accommodation she would not be required to work more than one Saturday per month, being denied reasonable accommodation by her direct

supervisor, Francis after being approved to not work on more than two Saturdays per month by Employee Relations in September 2020 due to staffing issues during the COVID-19 Pandemic, disciplined and ridiculed by Francis for being unable to work every Saturday each month due to her religious observances, being denied a promotion and retaliated against for complaining to HR and upper management on more than one occasion about consistently being scheduled to work on Saturdays, one of her days of religious worship and having taken adverse actions against her by denying her promotion to the RB position she was well qualified for and requested by her supervisor to transfer her employment to another branch. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

136.    By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

137.    By the above-described unlawful conduct, the individually named Defendant Francis, in her individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

138.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

139.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## TENTH CAUSE OF ACTION

**Violation of New York City Human Rights Law For Aiding, Abetting, Inciting, Compelling and Coercing Religious Forbidden Acts — Against Defendant Shirlyn Francis**

140.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

141.    The New York City Administrative Code §8-107(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

142.    Francis engaged in conduct that aided, abetted, incited, compelled and coerced acts forbidden under New York City Human Rights Law, Administrative Code § 8-101, *et seq.*, in violation of Administrative Code § 8-107(6).

143.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

 **WHEREFORE**, Plaintiff Deborah Stacey Clyne requests judgment against Defendants Bank of America, N.A. and Shirlyn Francis respectfully requests that this Court:

(a)    Declare the discriminatory acts and practices of Defendants complained of herein violated Plaintiff Clyne's rights under Title VII, the NYHRL and the NYCHRL;

(b)    Grant Plaintiff actual, consequential, liquidated, punitive and any other damages that the Court may deem appropriate against Defendants;

(c)    Order Defendants to pay lost, foregone and future wages to Plaintiff Clyne according to proof;

(d)    Order Defendants to pay Plaintiff Clyne's reasonably incurred attorneys' fees, costs and disbursements;

(e)      Order pre-judgment and post-judgment interest on all damages awarded;

(f)      Grant an award of punitive damages in an amount to be determined at trial;

(g)      Grant Plaintiff Clyne such other and further relief as this Court deems just and proper.

Dated: New York, New York
        August 17, 2021

                /s/ Olivia M. Clancy
              Jon Choate
              Olivia M. Clancy
              SHEGERIAN & ASSOCIATES
              *Attorneys for Plaintiff*
              DEBORAH STACEY CLYNE
              90 Broad Street, Suite 804
              New York, New York 10004
              Tel: (212) 257-8883
              jchoate@shegerianlaw.com
              oclancy@shegerianlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th of August, 2021, I sent a copy of the First Amended Complaint dated August 17, 2021 by electronic communication to Roy P. Salins, Esq. of Davis Wright Tremaine LLP at email address RoySalins@dwt.com.

*Olivia Clancy*

Olivia M. Clancy, Esq.
SHEGERIAN & ASSOCIATES
*Attorneys for Plaintiff*
DBORAH STACEY CLYNE
90 Broad Street, Suite 804
New York, New York 10004
T: (212) 257-8883
oclancy@shegerianlaw.com